**IN THE COURT OF APPEALS OF IOWA**

No. 23-0583
Filed June 7, 2023

**IN THE INTEREST OF B.W. and J.W.,**
**Minor Children,**

**A.C., Mother,**
　　Appellant.
_____

Appeal from the Iowa District Court for Winnebago County, Karen Kaufman Salic, District Associate Judge.

A mother appeals the termination of her parental rights to her two daughters. **AFFIRMED**.

Cameron M. Sprecher of Sprecher Law Office, Mason City, for appellant mother.

Brenna Bird, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Carrie Jean Rodriguez of Garland & Rodriguez, Garner, attorney and guardian ad litem for minor children.

Considered by Schumacher, P.J., and Chicchelly and Buller, JJ.

**SCHUMACHER, Presiding Judge.**

A mother appeals the termination of her parental rights to two children. She argues there is insufficient evidence to support a statutory ground for termination, termination is not in the children's best interests, and the court should decline to terminate her parental rights based on her close bond with the children. We find clear and convincing evidence in this record to support a statutory ground for termination. Termination is in the children's best interests. And we, like the juvenile court, decline to apply an exception to termination. Accordingly, we affirm.

**I.      Background Facts & Proceedings**

B.W. was born in October 2009. She has cerebral palsy and is nonverbal. Concerns were reported to the Iowa Department of Health and Human Services (HHS) about her hygiene and physical health, including matted hair and a low weight of fifty pounds. B.W. was suffering from not having her needs met and having difficulties consuming nutrition. J.W. was born in July 2013. Concerns were also expressed about her care given the conditions of the home and her physical appearance. A child-abuse assessment was founded for denial of critical care with both children listed as victims and the parents listed as the perpetrators of abuse in March 2021.[1] The assessment included information about the parents' use of methamphetamine. Following the assessment, the parents were referred for voluntary HHS services, in which they agreed to participate.

Amid ongoing concerns of drug use by the parents, mental-health issues, which included suicidal behavior, criminal activity, violence in the home, and a lack

---

[1] This family previously came to the attention of HHS in 2017, but services were not recommended and there was no court involvement.

of engagement in services, HHS requested an emergency removal order. Both children were formally removed from parental custody in April 2021. Also supporting the formal removal was the receipt of a 911 call from the home. Upon law enforcement arrival, the father was placed in handcuffs due to his combativeness. Even after being placed in handcuffs, the father had to be sedated by medical personnel. The mother was found passed out in the basement from the consumption of alcohol or a combination of alcohol and controlled substances. A marijuana pipe was located near the mother. The girls were inside the home. J.W. had an injury on her head that required medical attention, caused by her father kicking in the bathroom door where J.W. was hiding. Both parents were transported to the hospital following this event.

The children were initially placed with their maternal grandparents in Minnesota. J.W. was moved to foster care pending an Interstate Compact on the Placement of Children (ICPC) approval for the maternal grandparents. While the grandparents worked to maintain B.W. in their home, the physical lifting and moving of B.W. and the layout of the grandparents' home, including the bathtub being on the second story of the home, placed a strain on the placement and B.W.

A second child-abuse assessment was completed in May 2021 naming both parents as perpetrators of abuse with the children listed as victims for failure to provide proper supervision. J.W. was also listed as a victim of abuse for physical injury with her father listed as the perpetrator of the abuse. A request for a child-in-need-of-assistance (CINA) petition was made by HHS.

The children were adjudicated CINA pursuant to Iowa Code section 232.2(6)(c)(2) (2021) the month following the removal. The children

remained out of parental custody following the dispositional hearing held in July 2021, but J.W. was able to return to her maternal grandparents' home in Minnesota. B.W. was admitted to a specialized facility equipped to address her medical needs. The facility made connections for updated medical appointments, which included B.W. receiving a new wheelchair and being fitted for a new stander.

The night of the dispositional hearing, the parents consumed a significant amount of alcohol, the father drove the family vehicle through a wooded area, causing substantial damage to the vehicle, and he assaulted the mother. The father was arrested, and a no-contact order was issued. Shortly thereafter, the mother admitted herself to the hospital for suicidal concerns. The mother tested positive for methamphetamine in December and overdosed on January 22, 2022.

A year after the initial removal, a permanency hearing was held in April 2022. The mother had lost her house due to a mortgage foreclosure. She provided two negative drug tests but overdosed again on March 31, 2022. She was in a vehicle accident and charged with operating while intoxicated when she tested positive for fentanyl. The mother denied taking fentanyl but stated that she had taken some oxycodone left over from an older prescription. Her drug patch from April 7 was positive for cocaine. HHS recommended additional time for reunification services based on some recent progress with services by the mother. The juvenile court adopted the recommendation.

At a permanency review hearing held in August, HHS recommended that a petition for termination be filed, but such recommendation was resisted by the other parties. The mother had made some progress by moving into an apartment but had another incident that required her hospitalization in May. The court

granted the parents another extension after the parents committed to necessary progress.

At a subsequent permanency review hearing held in December, while HHS and the guardian ad litem recommended establishing a guardianship with the maternal grandparents, the court ordered that a termination petition be filed, concluding it was likely the recommended guardians would return the children to the mother and that the proposed guardians could not detect when the mother was under the influence of controlled substances. The mother admitted to using marijuana in November and abusing a prescription drug in December. She was observed to be under the influence. The mother had also began dating a new boyfriend who was observed to be under the influence, controlling, and threatening the providers working with the mother.

The State filed the ordered petition to terminate the parental rights of both parents in mid-December 2022. A termination hearing was held in March 2023. At the time of the termination hearing, the county attorney, HHS, and the guardian ad litem supported termination of the parents' parental rights. Following hearing, the court terminated the mother's parental rights to the children pursuant to Iowa Code section 232.116(1)(f), (k), and (*l*) (2022). The mother filed a timely notice of appeal. The father's parental rights were also terminated. He does not appeal.

## II. Standard of Review

We review the termination of parental rights de novo. *In re P.L.,* 778 N.W.2d 33, 39 (Iowa 2010). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

### III. Statutory Ground for Termination

The mother contends the State failed to establish a ground for termination under section 232.116(1). On appeal, the mother challenges the court's findings as to all grounds relied on by the juvenile court. "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We focus our de novo review on Iowa Code section 232.116(1)(f). As to this ground, the mother only challenges the fourth element–whether the children could be returned to her custody at the time of the termination hearing. *See D.W.*, 791 N.W.2d at 707 (defining "at the present time" as "at the time of the termination hearing").

Despite nearly two years of services, the mother's contact with her children remained fully supervised. The mother herself requires almost daily supports to maintain a functioning level. She has been granted two previous court ordered extensions of time for reunification efforts. By the time of the termination hearing, the children had been out of parental custody for almost two years. While the mother has engaged in some services, she continues to struggle with her significant mental-health and substance-abuse issues. We determine on this record the evidence is clear and convincing that the mother is not capable of safely parenting and could not have the children placed in her custody at the time of the termination hearing. We affirm as to this statutory ground.

### IV. Best Interests of the Children

The mother claims termination of her parental rights is not in the children's best interests. When considering a child's best interests, we "give primary

consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

We conclude that termination is in the children's best interests. As described above, the mother has not demonstrated she can manage the children's day to day needs. She is only able to manage her own needs with the assistance of multiple providers on a daily basis. And even with those services, the mother has continued to struggle in her sobriety and mental health.

Since removal, both children are thriving. The children have remained out of the home since the initial removal without any trial home placements. B.W. remains in a specialized facility that is meeting her significant medical needs. She has gained about twenty pounds since admittance. She now has a feeding tube, which has assisted in her overall well-being. Prior to placement in the facility, B.W.'s low weight caused her physical energy to be directed toward survival, causing a lack of growth in other areas. She attends public school, which she enjoys. As noted by the case manager for HHS, it is unlikely that B.W. will return to a home setting. J.W. is placed with her maternal grandparents, where she is doing well. It is anticipated, pending ICPC approval, both children will be adopted by their maternal uncle and his wife. Even though this will require a move by J.W., the proposed placement has been involved with both children and this placement is familiar to the children. Termination is in their best interests.

## V.    Close Parent-Child Bond

As part of her best-interests argument, the mother has also asserted that an exception to termination should be applied due to her close bond with the

children.[2]  We begin with noting that although Iowa Code section 232.116(3) contains grounds that a juvenile court may invoke to preclude termination, such statutory grounds are permissive, not mandatory.

> While a finding of any of these factors allows us to choose not to terminate parental rights, "[t]he factors weighing against termination in section 232.116(3) are permissive, not mandatory." *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (quoting *In re D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011)).  We may use our discretion, "based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *Id.* (quoting *D.S.*, 806 N.W.2d at 475).

*In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016).

We recognize our case law supports that the risk of losing a close bond, even without outward manifestations of the harm, may meet the burden under section 232.116(3)(c).  *See, e.g.*, *In re M.S.*, 889 N.W.2d 675, 684 (Iowa Ct. App. 2016) (applying close-relationship exception when father had a "strong bond" with the child, and provided "excellent and loving care for the child" during visitation); *In re J.C.*, No. 11–1936, 2012 WL 469807, at *4 (Iowa Ct. App. Feb. 15, 2012) (finding mother met exception by displaying "extraordinary potential to be a successful parent" in visitation with her son and the two possessed an "unusually close relationship").

HHS, the guardian ad litem, and the court noted a bond between J.W. and her mother.  The contact between the mother and B.W. is significantly less, but the mother has supported B.W.'s specialized placement.  But the juvenile court

---

[2] The mother did not urge this exception to the juvenile court.  The juvenile court, did, however, address such in the termination order.  We elect to reach the merits concerning the permissive exception.

highlighted that despite the bond, ongoing contact with the mother and J.W. would "be detrimental to J.W.'s physical and emotional well-being." And unlike the cases in which our court has applied this exception to preclude termination, the mother has not displayed "extraordinary potential to be a successful parent." Unfortunately, the mother has difficulty taking care of herself. With such a barrier, a bond between herself and the children cannot outweigh the need for permanency for the children after two years of services.

And once the State has proved a ground for termination of parental rights, the parent resisting termination bears the burden to establish an exception to termination. *See* Iowa Code § 232.116(3); *In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018). The parent's burden of proof on the bond exception is by clear and convincing evidence. Iowa Code § 232.116(3)(c). The mother did not testify at the termination hearing, did not call any witnesses, and did not offer any exhibits. The only witness at the hearing was the HHS case manager, called by the State. On this record, the mother has failed to meet her burden that termination of her parental rights would be detrimental to the children. We, like the juvenile court, decline to apply an exception from section 232.116(3) to preclude termination.

**AFFIRMED**.